Submitted November 5, 2010, OAR 255-060-0011, OAR 255-060-0016, OAR 291-062-0110, OAR 291-062-0140, OAR 291-082-0105(15), and OAR 291-082-0110 held invalid May 25, respondent Board of Parole & Post-Prison Supervision's petition for reconsideration filed July 12 and petitioner Arlen Porter Smith's response to petition for reconsideration filed June 28 allowed by opinion September 21, 2011
See 245 Or App 647, 264 P3d 173 (2011)

ARLEN PORTER SMITH
and Dwayne Edward Abraham,
*Petitioners,*

*v.*

DEPARTMENT OF CORRECTIONS
and Board of Parole & Post-Prison Supervision,
*Respondents.*

Agency/Board/Other
A132629

259 P3d 42

Arlen Porter Smith and Dwayne E. Abraham filed the briefs *pro se*.

John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Erin C. Lagesen, Assistant Attorney General, filed the brief for respondents.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Senior Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Petitioners challenge rules promulgated by the Department of Corrections (DOC) and the Board of Parole and Post-Prison Supervision (board) that refer to "STATIC-99," an actuarial risk assessment instrument. Petitioners argue that, due to their unelaborated reference to STATIC-99, the rules are unconstitutionally vague, unlawfully promulgated, and amount to an unlawful delegation of rulemaking authority to a private entity. We agree with some of petitioners' arguments, and we therefore hold that the rules are invalid.

ORS 181.585(2) requires the board and DOC to determine whether an offender is a "predatory sex offender" by using "a sex offender risk assessment scale approved by the Department of Corrections or a community corrections agency." Pursuant to that requirement, the board promulgated (and DOC approved) OAR 255-060-0011, which adopted the STATIC-99 as the appropriate risk assessment scale. The STATIC-99 is an actuarial risk assessment (ARA) instrument that is designed to evaluate a sex offender by compiling a "score" for him[1] based on historical data. Many states use the STATIC-99 to predict offenders' risk of recidivism. As a New York court explained in *State v. Rosado*, 889 NYS 2d 369, 377-78 (2009):

> "The [STATIC-99] is called 'static' because it looks only at static, *i.e.*, unchanging, historical events. Like other ARAs, it compares the characteristics and history of a given person to the characteristics of a group. In the case of the STATIC-99, research was done based on a group of sex offenders who had been reconvicted, and certain characteristics were identified which correlated with recidivism. A test was then developed by which the individual sex offender's characteristics could be compared with the group characteristics, to determine the extent to which the individual had characteristics associated with reoffending.

> "The 'risk items' or 'characteristics' which are contained in the STATIC-99 consist of demographic information (age of sex offender, and living with a partner for more than two

---

[1] We use the pronoun "him" advisedly. STATIC-99 is not used to assess women. *STATIC-99 FAQ* at 1, http://www.static99.org/pdfdocs/faq.pdf (accessed May 18, 2011).

years), criminal history (charges and convictions for index and other sex and violent offenses), and victim questions (whether any victims were unrelated to the offender, 'strangers,' or male)."

The board rule adopting STATIC-99 provides, in part:

"In determining whether an inmate or offender is a predatory sex offender under this rule, the Board shall use the STATIC-99 (Exhibit Q-I) and definitions (Exhibit Q-II), which have been approved by the Department of Corrections as required by ORS 181.585(2)."

OAR 255-060-0011(1). Although the exhibits to which the rule refers are not filed with the Secretary of State, and no rule or statute informs a reader where to find them, they are available on the DOC's website at http://www.oregon.gov/ BOPPPS/docs/Rules/ExhQ1.pdf (accessed May 18, 2011) and http://www.oregon.gov/BOPPPS/docs/ExhibitQ2.pdf (accessed May 18, 2011). Exhibit Q-I is a "scoring worksheet" containing a list of factors to be used in scoring an individual, with point values assigned to each factor and a table indicating the total point scores that correspond to various risk levels. Exhibit Q-II contains definitions of terms used in the score sheet.

In Oregon, STATIC-99 is used not only (or principally) to predict recidivism; it is also used to determine whether an inmate should be classified as a "predatory sex offender," OAR 255-060-0011(1); OAR 255-060-0016(3), and to determine whether an inmate can participate in certain programs, *see, e.g.*, OAR 291-062-0140(4) ("Inmates who score a six or higher on the Static 99 will not be accepted into an A[lternative] I[ncarceration] P[rogram].").

Petitioners challenge DOC's and the board's use of the STATIC-99 on three grounds. First, petitioners argue that, by referring to the test only by name, the agencies have failed to adequately identify the test and that, therefore, the rule is unconstitutionally vague. Second, because nothing specifies which iteration of the STATIC-99 the agency's rules refer to, the board has unlawfully delegated its rulemaking authority, because the private entity that produces the

instrument would alter it and the alteration would automatically become part of the rules. Third, petitioners argue that the agencies have failed to comply with the required rule-making procedure by failing to file a copy of the test with the Secretary of State or by including the location of the exhibits that the rules refer to within the text of the rules.[2]

We begin with the board's rules referring to STATIC-99: OAR 255-060-0011(1)[3] and OAR 255-060-0016(1).[4] Petitioners argue that those rules are unconstitutionally vague and unenforceable because the rules do not explain what STATIC-99 is. Petitioners make a good point; even the board itself could not explain what STATIC-99 was until almost a year into petitioners' challenge. However, both

---

[2] Because petitioners filed this rule challenge *pro se* (and because the agencies did not always respond in a timely or straightforward fashion to petitioners' filings), it is not always clear what, exactly, petitioners are challenging. Our characterization of the challenges may or may not include every allegation that petitioners made during the protracted course of this matter, but we are confident that they encompass the gist of petitioners' challenges.

[3] OAR 255-060-0011(1) provides:

"For purposes of this rule, a predatory sex offender is defined as a person who exhibits characteristics showing a tendency to victimize or injure others and has been convicted of one or more of the following offenses: Rape in any degree, Sodomy in any degree, Unlawful Sexual Penetration in any degree or Sexual Abuse in any degree, or has been convicted of attempting to commit one or has been found guilty except for insanity of one of these crimes. In determining whether an inmate or offender is a predatory sex offender under this rule, the Board shall use the STATIC-99 (Exhibit Q-I) and definitions (Exhibit Q-II), which have been approved by the Department of Corrections as required by ORS 181.585(2). The Board may also consider any other evidence that the inmate or the offender exhibits characteristics showing a tendency to victimize or injure others."

[4] OAR 255-060-0016(1) provides:

"For purposes of this rule, a predatory sex offender is defined as a person who exhibits characteristics showing a tendency to victimize or injure others and has been convicted of one or more of the following offenses: Rape in any degree, Sodomy in any degree, Unlawful Sexual Penetration in any degree or Sexual Abuse in any degree, or has been convicted of attempting to commit one or has been found guilty except for insanity or one of these crimes. In determining whether an inmate or offender is a predatory sex offender under this rule, the Board shall use the STATIC-99 (Exhibit Q-I) and definitions (Exhibit Q-II), which have been approved by the Department of Corrections as required by ORS 181.585(2). The Board may also consider evidence that the inmate is behaving in a manner that is consistent with exhibiting characteristics showing a tendency to victimize or injure others submitted in written reports prepared by an approved evaluator and a release counselor of any Department of Corrections institution."

rules refer to exhibits—specifically, Q-I and Q-II. Those exhibits are not quoted in the rules, nor do the rules indicate where they might be found. Regardless, we need not decide whether those facts amount to a constitutional shortcoming, because they indicate a subconstitutional fatal shortcoming.

OAR 166-500-0040(1) dictates what is required for a permanent administrative rule filing. That rule provides, as relevant here, that

"(C)   Agencies adopting or amending rules incorporating published works by reference may omit copies of the publications from their rule filings if:

"(i)   The publications are unusually voluminous or costly to reproduce;

"(ii)   The location of the publication and its availability to the public are stated in the rule."

Thus, if the agency is adopting a published work by reference, as it has done with the STATIC-99, that work must be included with the filing of the Secretary of State unless (1) the work is unusually voluminous or costly to reproduce or (2) the location of the publication and its availability to the public are stated in the rule. Petitioners argue that the board did not meet the requirements of this rule because the test it not "unusually voluminous" and the test's availability is not stated clearly in the rule. We agree. Not only inmates, but members of the public as well, have an important interest in knowing what criteria the board uses in determining whether an individual is a predatory sex offender. *See, e.g.*, ORS 181.585 - 181.606 (notice, registration, and reporting requirements for predatory sex offenders). Until the board indicates, in some reasonable way, where Exhibit Q-I and Exhibit Q-II may be found, the board rules that refer to STATIC-99 are invalid.

That determination obviates, for the time being, the need to address petitioners' argument that, by incorporating STATIC-99 without indicating which version of the test applies, the board has, in essence, adopted an open-ended test that can be changed at will by the test's authors. In the interest of efficiency, we hold that this argument is not well taken. The board rules refer, not to a generic STATIC-99, but

to the particular material taken from the date-identified STATIC-99 that is established in exhibits Q-I and Q-II. The rules do not constitute an unlawful delegation.[5]

We turn to DOC's rules referring to STATIC-99: OAR 291-062-0110 (defining STATIC-99 as "[a]n actuarial instrument designed to estimate the probability of sexual recidivism among adults * * * used to determine which offenders will be designated 'predatory' "), OAR 291-062-0140(4) ("Inmates who score a six or higher on the Static 99 will not be accepted into an A[lternative] I[ncarceration] P[rogram]."), and OAR 291-082-0110 (inmate who scores over 5 on STATIC-99 is not eligible for on-site work assignment). In none of those rules does DOC refer to any exhibits or other material that might inform a person what STATIC-99 is. Further, the fact that another agency—the board—has, in essence, defined STATIC-99 by identifying it with specific exhibits, does not mean that the same definition applies to DOC rules, absent a cross-reference. Until and unless DOC amends the disputed rules, or adds new rules, so as to identify "STATIC-99" and either incorporates the relevant parts of it or indicates where they can be found, the rules are invalid.

OAR 255-060-0011, OAR 255-060-0016, OAR 291-062-0110, OAR 291-062-0140, OAR 291-082-0105(15), and OAR 291-082-0110 held invalid.

---

[5] Petitioners are correct that the creators of the STATIC-99 have revamped how the STATIC-99 is used. The original STATIC-99 had been developed from samples of sex offenders who were initially released from incarceration in the 1960s through the 1980s. However, since the mid-1990s the rate of violent crimes has decreased, making the actual rate of recidivism much lower, and thus new norms were required which more accurately reflected these trends. New data on crime rates led to a reevaluation of the continued efficacy of the STATIC-99. However, the questionnaire and corresponding scores have not changed; thus, the board's administrative rules have not been altered with the changing research surrounding the STATIC-99. And although there is a new STATIC questionnaire, it is entitled STATIC-2002. *Rosado*, 889 NYS 2d at 391.